IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **MARCIELA LOPEZ, Individually and as** | § | |
| **Next Friend of VICTOR L. REYES, JR.** | § | |
| **DESTINY B. REYES, PRAXEDES** | § | |
| **A. REYES, AND VINCENT REYES,** | § | |
| **Minors,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. **3:12-CV-01093-L** |
| | § | |
| **LINDA TRUJILLO,** | § | |
| | § | |
| Intervenor, | § | |
| | § | |
| **ARCH ALUMINUM & GLASS CO., INC.,** | § | |
| **AND PRO-CRATE & ASSEMBLY, LLC,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Plaintiffs' and Intervenor's Motion to Remand, filed May 4, 2012. After carefully reviewing the motion, briefs, record, and applicable law, the court **grants** Plaintiffs' and Intervenor's Motion to Remand.

## I.     Background

This case is a legal and procedural morass.  The death of Victor Luis Reyes ("Reyes") in a work-related accident gave rise to this case and the removal of two related state court actions. Plaintiffs brought the first of the two actions, Case No. DC-10-00010, against TEPCO Contract Glazing, Inc. ("TEPCO") on January 4, 2010, in the 101st Judicial District Court, Dallas County, Texas.  According to a January 8, 2010 letter from Plaintiffs to the state court, the suit was originally

brought based on a personal injury claim under the Texas Workers Compensation Act against

Reyes's employer.  The letter further notes that this claim was settled presuit, and the case was filed

solely for the purpose of seeking an order from the court placing all of the minor Plaintiffs'

settlement funds in an annuity or similar tax deferred structure.  It is not clear from this letter or

Plaintiffs' state court pleadings, but it appears that TEPCO was Reyes's employer.  After a final

agreed judgment as to TEPCO was entered by the state court on January 26, 2010, Plaintiffs filed

an amended pleading on February 23, 2010, adding Arch Aluminum & Glass Co., Inc. ("Arch

Aluminum") and Pro-Crate & Assembly, LLC ("Pro-Crate") as defendants (collectively,

Defendants"), and  alleging claims for product liability and negligence.  Arch Aluminum filed an

Original Answer with a general denial and jury demand on March 22, 2010, and a First Amended

Answer on March 23, 2010, in which it asserted affirmative defenses and special exceptions.

Plaintiffs brought the second action, Case No. DC-10-04225, against Defendants on April

9, 2010, and the case was assigned to the 162nd Judicial District Court, Dallas County, Texas.

Pursuant to Dallas County Local Rule 1.06, the 162nd Judicial District Court transferred the action

*sua sponte* to the 101st Judicial District Court.  Although Plaintiffs' pleadings in both cases are

virtually identical, there is no indication in the record that the two actions were ever consolidated.[1]

Additionally, although the actions were not consolidated, the record reflects that the parties have

---

[1] Dallas County Local Rule 1.06 states that a later filed related case will be transferred to the court where the earlier filed case is pending but does not call for consolidation of the cases.   The Dallas County Local Rules further provide that any motion for consolidation filed pursuant to Texas Rule of Civil Procedure 174(a) must be filed in the earlier filed case.  Again, however, there is no indication in the record that any of the parties moved to consolidate the two cases.

blurred the distinction between the two cases and treated them, albeit inconsistently, as one and the same.[2]

After Arch Aluminum filed its Original Answer on April 30, 2010, in Case No. DC-10-04225 to Plaintiff's Original Petition, the parties filed an agreed motion in Case No. DC-10-04225 on May 3, 2010, requesting the court to retain the case rather than transferring it to the 101st Judicial District Court. In the agreed motion, the parties explained that Plaintiffs filed the second action because they were contacted by the court and advised that they would need to file a new petition since their amended pleading in the first action was filed more than 30 days after entry of the final judgment.[3] The agreed motion was, nevertheless, denied because an order transferring the case had already been entered.

On May 13, 2010, Linda Trujillo ("Intervenor")[4], Reyes's mother, filed an Original Petition in Intervention in Case No. DC-10-04225, to which Arch Aluminum answered with a general denial

---

[2] As explained herein, Arch Aluminum filed a Suggestion of Bankruptcy but only did so in Case No. DC-10-04225, and the record reflects that only Case No. DC-10-04225 was stayed by the state court. The parties, nevertheless, filed their motion to lift the stay in Case No. DC-10-00010, which was granted, and there is no indication in the record that the stay in Case No. DC-10-04225 was ever lifted. To further confuse matters, Plaintiffs filed a motion with the bankruptcy court requesting that the stay in Case No. DC-10-00010 be lifted, stating that Case No. DC-10-00010 was commenced on April, 9, 2010, the date Case No. DC-10-04225 was actually commenced. Attached to Plaintiffs' motion to lift the stay in Case No. DC-10-00010 is a copy of the petition filed in Case No. DC-10-04225. A footnote in Plaintiffs' motion explains that Case No. DC-10-04225 was originally brought in the 162nd District Court but transferred to the 101st District Court; however, the motion does not state that the case was consolidated with the earlier filed action. Although Plaintiffs moved to lift the stay in Case No. DC-10-00010, the bankruptcy court entered an order lifting the stay in Case No. DC-10-04225. Thereafter, the parties returned to state court and filed an agreed motion to lift the stay in Case No. DC-10-00010, based on the bankruptcy court's order lifting the stay in Case No. DC-10-04225. Arch Aluminum's Notice of Removal refers to both state court actions and states that both cases are still pending, but Exhibit B to the Notice of Removal lists DC-10-00010 as the only case being removed while at the same time referring to pleadings filed in both cases. The record further reflects that Plaintiffs' nonsuit of Pro-Crate, which is the basis for Arch Aluminum's removal, was filed only in DC-10-00010.

[3] This is puzzling to the court because, according to its calculation, only 28 days had passed after entry of the final judgment when Plaintiffs filed their amended pleading in Case No. 10-00010.

[4] The court refers to Plaintiffs and Intervenor collectively as "Movants" in addressing their grounds for remand.

and request for a jury trial.  Several months later, on October 27, 2010, Arch Aluminum filed a Notice of Suggestion of Bankruptcy in Case No. DC-10-04225, in which it stated that it had filed a Chapter 11 bankruptcy petition on November 25, 2009, in the United States District Court for the Southern District of Florida.  Thereafter, on November 10, 2010, the state court entered an order staying Case No. DC-10-04225, in light of the bankruptcy proceeding, and cancelled the jury trial set for August 1, 2011.  After Case No. DC-10-04225 was stayed, no further activity occurred in the case aside from the lawyers filing vacation letters with the court.

The record does not indicate that Case No. DC-10-00010 was ever stayed; however, there was no activity in this case after Defendants filed their respective answers to Plaintiffs' amended pleading in May 2010, until the parties filed a joint motion to reinstate the case on February 7, 2012, which was granted by the court on February 14, 2012.  The parties' motion to reinstate Case No. DC-10-00010 and the court's corresponding order were based on the bankruptcy court's order partially lifting the automatic stay in Case No. DC-10-04225 on February 1, 2012, to allow Plaintiffs to pursue their negligence claim as to insurance proceeds.

On March 16, 2012, Plaintiffs nonsuited their claims against Pro-Crate in Case No. DC-10-00010, and Arch Aluminum filed a Notice of Removal on April 6, 2012, based on diversity jurisdiction, with regard to both state court actions.  According to the state court pleadings, Plaintiffs reside in Dallas County, Texas; Intervenor is domiciled in Texas; Pro-Crate is a Texas corporation with its headquarters and principal place of business in Texas; and Arch Aluminum was, at the time the lawsuits were commenced, a Florida corporation.  Arch Aluminum asserts in its Notice of Removal that it is a citizen of Florida but does not state where its principal place of business or headquarters is located.  Arch Aluminum further asserts that although Plaintiffs' pleadings do not

specify the amount of damages sought, it is facially apparent that the damages sought exceed $75,000, because Plaintiffs are seeking damages for wrongful death, punitive damages, and attorney's fees.   On May 4, 2012, Plaintiffs and Intervenor moved to remand the cases on the grounds that removal was not accomplished within one year and therefore was untimely under section 1446 of the removal statute, and that equity should not be applied to toll Arch Aluminum's deadline for removal.

## II.    Standard for Subject Matter Jurisdiction and Removal

A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States," or over civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship exists between the parties.  28 U.S.C. §§ 1331, 1332.  Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim.  *See Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).   Absent jurisdiction conferred by statute or the Constitution, they lack the power to adjudicate claims and must dismiss an action if subject matter jurisdiction is lacking.  *Id.*; *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)).   A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject matter jurisdiction over a case.  *Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level.");  *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) ("federal court may raise subject matter jurisdiction *sua sponte*").

Diversity of citizenship exists between the parties only if each plaintiff has a different citizenship from each defendant. *Getty Oil Corp. v. Insurance Co. of North America*, 841 F.2d 1254, 1258 (5th Cir. 1988). Otherwise stated, 28 U.S.C. § 1332 requires complete diversity of citizenship; that is, a district court cannot exercise jurisdiction if any plaintiff shares the same citizenship as any defendant. *See Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)), *cert. denied*, 541 U.S. 1073 (2004). "[T]he basis on which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Getty*, 841 F.2d at 1259 (citing *Illinois Cent. Gulf R.R. Co. v. Pargas, Inc.*, 706 F.2d 633, 636 n.2 (5th Cir. 1983)). Failure to allege adequately the basis of diversity "mandates remand or dismissal of the action." *Stafford v. Mobil Oil Corp.*, 945 F.2d 803, 805 (5th Cir. 1991). A notice of removal "must allege diversity both at the time of the filing of the suit in state court and at the time of removal." *In re Allstate Ins. Co.*, 8 F.3d 219, 221 (5th Cir. 1993) (quotation marks and citations omitted). Such failure, however, is a procedural defect and may be cured by filing an amended notice. *Id.* n.4.

A natural person is considered a citizen of the state where that person is domiciled, that is, where the person has a fixed residence with the intent to remain there indefinitely. *See Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 555-56 (5th Cir. 1985). A partnership or unincorporated association's citizenship is determined by the citizenship of each of its partners. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990). A corporation is a "citizen of any State by which it has been incorporated and of the State where it has its principal place of business[.]" 28 U.S.C. § 1332(c)(1).

For diversity purposes, the amount in controversy is determined by the amount sought on the face of the plaintiff's pleadings, so long as the plaintiff's claim is made in good faith. *St. Paul*

*Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir.), *cert. denied*, 516 U.S. 865 (1995). Removal is thus proper if it is "facially apparent" from the complaint that the claim or claims asserted exceed the jurisdictional amount. *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir.), *reh'g denied*, 70 F.3d 26 (5th Cir. 1995). In a removal case, when the complaint does not state a specific amount of damages, the defendant must establish by a preponderance of the evidence that "the amount in controversy exceeds the [$75,000] jurisdictional amount." *St. Paul Reinsurance*, 134 F.3d at 1253. "The preponderance burden forces the defendant to do more than point to a state law that *might* allow the plaintiff to recover more than what is pled. The defendant must produce evidence that establishes that the actual amount of the claim will exceed [the jurisdictional amount]." *De Aguilar*, 47 F.3d at 1412 (emphasis in original). The test to be used by the district court is "whether it is more likely than not that the amount of the claim will exceed [the jurisdictional amount]." *Allen*, 63 F.3d at 1336. As the Fifth Circuit has stated, "[t]he district court must first examine the complaint to determine whether it is 'facially apparent' that the claims exceed the jurisdictional amount. If it is not thus apparent, the court may rely on 'summary judgment-type' evidence to ascertain the amount in controversy." *St. Paul Reinsurance*, 134 F.3d at 1253 (footnotes omitted). If a defendant fails to establish the requisite jurisdictional amount, the court must remand the case to state court. If a defendant establishes that the jurisdictional amount has been met, remand is appropriate only if a plaintiff can establish that it is "legally certain that his recovery will not exceed" the jurisdictional threshold. *In re 1994 Exxon Chemical Fire*, 558 F.3d 378, 387-88 (5th Cir. 2009). [5]

---

[5] Although Arch Aluminum's assertions regarding the amount in controversy are conclusory, the court concludes based on its examination of the record, including Plaintiffs' prior settlement with TEPCO that requires TEPCO to pay a total of $126,383.50 over a period of five years, that the damages sought by Plaintiffs against Arch Aluminum

Any doubts as to the propriety of the removal should be construed strictly in favor of remand. *Manguno v. Prudential Prop. and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). "The burden of establishing subject matter jurisdiction in federal court rests on the party seeking to invoke it." *St. Paul Reinsurance*, 134 F.3d at 1253. Accordingly, if a case is removed to federal court, the defendant has the burden of establishing subject matter jurisdiction.

The statute that governs the procedure for removing civil cases is 28 U.S.C. § 1446(b).[6] This statute provides:

> (b) The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

---

exceed the jurisdictional amount required for diversity. *See De Aguilar v. Boeing Co.*, 11 F.3d 55 (5th Cir. 1993) (concluding that jurisdictional amount was met based on evidence that the plaintiffs had claimed damages in excess of the requisite amount in controversy in other courts for the same injuries). As correctly noted by Arch Aluminum, Plaintiffs also seek punitive damages.

[6] Section 1446 was amended on December 7, 2011; however, the amended statute applies only to cases commenced on or after January 6, 2012. *See* Pub. L. 112-63, § 105(a)-(b), 125 Stat. 759, 762 (2011); 28 U.S.C. § 1332. For purposes of the diversity statute, commencement of an action is determined based on state law. 28 U.S.C. § 1332. Although this case was removed on April 6, 2012, the amended statute does not apply because the state cases were commenced prior to 2012.

28 U.S.C. § 1446(b).  The first paragraph of section 1446(b) applies to cases that are removable based on the initial pleading.  *New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 886 (5th Cir. 1998). The second paragraph applies only to cases that are not removable based on the initial pleading.  *Id.* Thus, removal under section 1446(b) can occur only in one of two ways.  A notice of removal must either be filed within thirty days after the defendant receives a copy of the Plaintiff's initial pleading, or if the case is not initially removable, a notice of removal must be filed within thirty days of an event under the second paragraph of 1446(b) "from which it may first be ascertained that the case is one which is or has become removable." § 1446(b).  The second paragraph of 1446(b) also limits removal of diversity cases not initially removable to one year after commencement of the state court action.  *Id.*; *see also* 28 U.S.C. § 1332.  The one-year limit was established as "a means of reducing the opportunity for removal after substantial progress has been made in state court. . . . Congressional concern is expressed that settlement with a diversity-destroying defendant on the eve of trial, for example, may permit removal by the other defendants, causing substantial delay and disruption." *Deshotel*, 142 F.3d at 886 (quoting legislative history) (internal quotation omitted).

## III.   Analysis

Arch Aluminum concedes in its Notice of Removal that it did not remove the case within one year from the commencement of either state court lawsuit, but it contends that the one-year limit should be equitably tolled, because the state court case as a whole was stayed from November 9, 2010, until February 14, 2012, as a result the bankruptcy proceeding.[7]  Arch Aluminum maintains that the state court case or cases were not removable initially based on diversity due to the presence of Texas defendant Pro-Crate, but it became removable after Plaintiffs nonsuited their claims against

---

[7] As previously noted, Arch Aluminum does not distinguish between the two state court actions.

Pro-Crate on March 16, 2012.  To support its position that the automatic bankruptcy stay tolled its removal deadline and created an equitable exception to the one-year deadline for removal of diversity cases, Arch Aluminum relies on *Value Recovery Group, Incorporated v. Hourani*, 115 F. Supp. 2d 761, 767 (S.D. Tex. 2000); *Patterson v. International Brothers of Teamsters, Local 959*, 121 F.3d 1345, 1349 (9th Cir. 1997); and *Easley v. Pettibone Michigan Corporation*, 990 F.2d 905, 908 (6th Cir. 1993).  Arch Aluminum also cites *Tedford v. Warner-Lambert Company*, 327 F.3d 423 (5th Cir. 2003), for the proposition that the one-year removal deadline under section 1446(b) is not inflexible and depends on the conduct of the parties.  Arch Aluminum maintains that the abatement of the state court case is an event that gives rise to equitable tolling under *Tedford*.  Arch Aluminum further contends that, as a matter of equity, the state court case was only active for 360 days.[8]

Movants counter that removal was untimely and equitable tolling is inapplicable because, while the Fifth Circuit recognized in *Tedford* that the one-year deadline to remove cases based on diversity may be equitably tolled, application of equitable tolling in that case was limited to cases where the plaintiff engaged in blatant and conspicuous forum shopping to prevent removal.  Movants also contend that Arch Aluminum delayed unreasonably in providing notice of the bankruptcy proceeding while at the same time actively participating in the state court proceedings by engaging in and obtaining extensive discovery, moving to join a third party, paying the jury fee, and requesting entry of a scheduling order.

---

[8] From this statement, it is unclear whether Arch Aluminum is referring to one or both of the state court actions.

### A.      Subject Matter Jurisdiction Over Case No. DC-10-04225

Before addressing the parties' contentions as to whether Arch Aluminum's one-year deadline for removal was equitably tolled as a result of the automatic stay, the court addresses *sua sponte* whether it has subject matter jurisdiction over Case No. DC-10-04225.  Upon reviewing the record, certain facts have become apparent that were not addressed in either of the parties' briefing.  As previously noted, Arch Aluminum's basis for removing the two state court actions is diversity jurisdiction allegedly resulting from Plaintiffs' nonsuit of Texas defendant Pro-Crate.  The record before the court, however, reflects that Pro-Crate was nonsuited only in Case No. DC-10-00010. Thus, based on the procedural posture of the cases and parties at the time of removal, the court determines that the parties were diverse in Case No. DC-10-00010 at the time of removal, but they were not diverse in Case No. DC-10-04225, as Defendant Pro-Crate and Plaintiffs are citizens of Texas.  Accordingly, the court *sua sponte* concludes that it lacks subject matter jurisdiction over Case No. DC-10-04225, and this action must therefore be remanded.

### B.      Timeliness of Arch Aluminum's Removal of Case No. DC-10-00010

The parties dispute whether the automatic stay of section 326 of the United States Bankruptcy Code tolls the one-year limitations period during which diversity cases must be removed under 28 U.S.C. § 1446(b).  The court was unable to find any Fifth Circuit case that has addressed this specific issue.  The court, however, believes that the Fifth Circuit's reasoning in *In re Armstrong*, 206 F.3d 465 (5th Cir. 2000), is instructive.  In *Armstrong*, the trustee contended that the automatic stay provision in section 362 of the Bankruptcy Code tolled its deadline to file for a refund of pre-petition taxes or created an implied exception to the time limits for seeking such a refund under section 6511

of the Internal Revenue Code.  The court disagreed, reasoning that the automatic stay is not designed to extend all statutes of limitation applicable to the trustee but instead merely prohibits action by the trustee against the debtor's property.  *Id. at* 469-70.   Absent authority or evidence of legislative intent to the contrary, the court concluded that "terms tolling the statute [section 6511] should not be implied into it." *Id.* The court therefore declined to hold that section 362 of the Bankruptcy Code tolled the statute of limitations for the filing of a refund claim by a bankruptcy trustee under section 6511 of the Internal Revenue Code. *Id.* at 470.

Other courts have similarly held in other contexts that section 362(a) applies to and prohibits only certain types of affirmative actions by creditors affecting property rights, not the tolling or running of a statutory period. *See, e.g., In re Prado*, 340 B.R. 574, 582 (Bankr. S.D. Tex. 2006) ("It would be a stretch to conclude that the mere passing of time is an act or proceeding against the debtor intended to be stayed by § 362(a)."); *In re Margulis*, 323 B.R. 130, 133 (Bankr. S.D.N.Y. 2005) ("[T]he automatic stay prevents entities from taking action to commence or continue a proceeding to collect a pre-petition debt, interfere with property of the estate, or, in some cases, interfere with property of the debtor. . . . [T]he automatic stay does not toll or restrain the mere passage of time.") (internal citations omitted).  Based on this reasoning, the court concludes that Arch Aluminum's one-year limit for removing this action based on diversity was not tolled by its initiation of a Chapter 11 bankruptcy proceeding or the automatic stay.

Moreover, regardless of whether the automatic stay tolled the one year time limit for Arch Aluminum, it did not preclude Plaintiffs and Intervenor from nonsuiting Pro-Crate before the stay was partially lifted. The automatic stay forestalls action against debtors in bankruptcy, not

co-debtors, co-tortfeasors, or other non-debtors. *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003). The Fifth Circuit has therefore held that it is well established "that the protections of § 362 neither apply to co-defendants nor preclude severance." *Hamel-Schwulst v. Country Place Mortg. Ltd.*, 406 F. App'x 906, 911 (5th Cir. 2010) (quoting *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 544 (5th Cir. 1983)). An exception to this general rule may apply to protect non-debtor co-defendants "where there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Reliant Energy*, 349 F.3d at 825 (quotation omitted). Section 362, however, "is rarely . . . a valid basis on which to stay actions against non-debtors." *Arnold v. Garlock, Inc*. 278 F.3d 426, 436 (5th Cir. 2001).

According to the record before the court, Case No. 10-0010 was not stayed by the state court after Arch Aluminum filed its Notice of Bankruptcy. While the state court order abated and closed Case No. 10-4225 in light of Arch Aluminum's bankruptcy, there is no indication that the automatic stay as to Arch Aluminum was extended to protect co-defendant Pro-Crate. Further, the state court's order "automatically staying" the entire state court proceeding pending resolution of Arch Aluminum's bankruptcy or an order by the bankruptcy court appears to have been erroneously entered based on the misconception that permitting Plaintiffs' and Intervenor's claims against Pro-Crate to proceed would violate the automatic stay.

Regardless of the state court's reasoning for staying the entire action, Arch Aluminum has presented no authority that an order of a state court can extend the time for removing a case to

federal court.  The court in *Value Recovery Group, Incorporated*, which is relied on by Arch Aluminum, held that "[a]s a general rule, the time to remove may not be extended by an order of the state court extending related deadlines under state law."  *Value Recovery Group, Inc.*, 115 F. Supp. 2d at 767 (citing *Sunbeam Corp. v. Brazin*, 138 F. Supp. 723, 724-25 (E.D. Ky. 1956) (concluding that neither a stipulation of the parties nor an order of the state court may extend the time within which a removal petition may be filed).  Other courts that have considered the issue similarly concluded that an order by a state court order cannot extend the time for removal under federal law.[9]

The court therefore concludes that neither the automatic stay, nor the state court order staying the state court action precluded Plaintiffs and Intervenor from nonsuiting their claims against co-defendant Pro-Crate before March 16, 2012, or seeking leave from the state court for this purpose before the automatic stay was lifted by the bankruptcy court or the state court case was reinstated. Because Pro-Crate was nonsuited more than two years after commencement of the action, the court concludes that diversity jurisdiction did not exist within one year of commencement of the action. Removal under section 1446(b) based on diversity was therefore untimely.

The cases relied on by Arch Aluminum do not require a different result.  *Tedford* is inapplicable, because Arch Aluminum does not contend or allege that Plaintiffs acted in bad faith

---

[9] *See, e.g., Burton v. Continental Cas. Co.*, 431 F. Supp. 2d 651, 656 (S.D. Miss. 2006) ("Congress attempted to address this inconsistency through enactment of § 1446(b). In the current statute, state law is not considered for determining the time for removal."); *Gorman v. Abbott Labs.*, 629 F. Supp. 1196, 199 (D. R.I. 1986) (reaching the same conclusion as *Sunbeam*); *Perrin v. Walker*, 385 F. Supp. 945, 948 (E.D. Ill. 1974) ("[U]nder the prevailing view, neither a stipulation of the parties nor an order of the state court may extend the time to file a removal petition."); *Welker v. Hefner*, 97 F. Supp. 630, 631 (E.D. Mo. 1951) ("The right of removal being conferred by the Federal Constitution and laws is beyond the reach of curtailment by State Action.") (internal citation omitted); *Coco v. Altheimer*, 46 F. Supp. 321, 322 (W.D. La. 1942) (concluding that case was subject to remand, since extension by state court of time to answer could not extend the time prescribed by federal statute for filing of petition for removal).

or otherwise attempted to avoid federal jurisdiction, a "key element of *Tedford*." *Peres v. JPMorgan Chase Bank, N.A.*, No. Civ. A. 3:07-CV-0569-B, 2007 WL 1944376, at *2 (N.D. Tex. June 19, 2007).  Specifically, the Fifth Circuit held in *Tedford* that "[w]here a plaintiff has attempted to manipulate the statutory rules for determining federal removal jurisdiction, thereby preventing the defendant from exercising its rights, equity may require that the one-year limit in § 1446(b) be extended" based on equitable estoppel.  *Tedford*, 327 F.3d at 427-29.  Thus, equitable tolling and the application of estoppel in *Tedford* were determined to be justified based on the plaintiff's "forum manipulation" to prevent removal, and the court did not discuss any other circumstances in which it would be proper to extend the one-year limit on removal.  *Tedford*, 327 F.3d 426-27.  The court further notes that amended section 1446 limits extension of the one-year deadline to cases in which "the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."  28 U.S.C. § 1446(c).  While amended section 1446 does not apply to this case, its language undercuts Arch Aluminum's argument that the Fifth Circuit's holding in *Tedford* should be extended to situations other than those where the plaintiff engages in forum manipulation to prevent removal.

  *Easley* and *Patterson* are likewise inapplicable, and they are not binding on this court. Relying on *Easley*, the Ninth Circuit in *Patterson* held that "[i]f an automatic stay is in effect at the time the plaintiff files a state court action . . . , the thirty-day period for removal does not begin to run until relief is obtained from the automatic stay."  *Patterson*, 121 F.3d at 1349.  The *Patterson* court reasoned that "[a] contrary rule would require a debtor to expend limited resources and to

continue to litigate a claim as if no stay were in place. If a debtor were forced to continue to litigate the claim, the purposes underlying the automatic stay would be thwarted." *Id.*

Even if *Patterson* were binding, its reasons for tolling removal so as not to require a debtor to expend limited resources to litigate or defend against a claim do not apply here, because Arch Aluminum chose to expend resources by actively participating in both state court proceedings for seven to eight months despite the automatic stay. Records provided by both parties reflect that Arch Aluminum actively participated in the state court cases from March 2010, until the time it filed its Notice of Suggestion of Bankruptcy in October 2010. During this time, Arch Aluminum, among other things, (1) filed answers to Plaintiffs' and Intervenor's pleadings; (2) moved for leave to designate a responsible third party; (3) filed a motion for entry of a scheduling order and an agreed scheduling order; (4) served written discovery on Plaintiffs; (5) subpoenaed five oral depositions for November 2010; and (6) served depositions on written questions and requests for medical, employment, and other records on twelve or more third parties. It was only after the motion to retain the case in the 162nd District Court was denied, the case was set for trial, and Arch Aluminum had obtained an extensive amount of discovery from Plaintiffs and various third parties that it provided notice of the bankruptcy proceedings in Florida. Arch Aluminum asks the court to apply equitable principles in calculating its one-year removal deadline; however, "he who comes into equity must come with clean hands." *New York Football Giants, Inc. v. Los Angeles Chargers Football Club, Inc.*, 291 F.2d 471, 473 (5th Cir. 1961).

Under the facts of this case, it would be unfair to allow Arch Aluminum to use the automatic stay as a sword and shield. *See In re Cobb*, 88 B.R. 119, 120-21 (Bankr. W.D. Tex. 1988) ("While

a debtor cannot waive the automatic stay, . . . when the debtor-in-possession appears and defends a suit on any basis other than application of the automatic stay, then the debtor-in-possession waives the automatic stay. To hold otherwise would allow a debtor-in-possession to have [a] trump card that he could play if he did not like the outcome of the action, but allowing him [to] take a favorable judgment. Such a one-sided result could hardly have been intended by Congress when it enacted the Bankruptcy Code.").[10]  Arch Aluminum asserts that its delay in providing notice of the bankruptcy proceeding was not intentional but instead due to its state court counsel's lack of affirmative knowledge that the bankruptcy proceeding was still pending; however, there is no evidence in the record to support this contention, and it does not change the fact that Arch Aluminum actively participated in the state court proceedings for several months and received a tactical advantage in obtaining what appears to be a significant amount of discovery before seeking a stay of the state court action against it.  In concluding that *Patterson* is inapplicable in light of Arch Aluminum's active participation in the state court actions, the court does not hold that Arch Aluminum waived the automatic stay or its right to remove the case.  The court simply declines to apply the Ninth Circuit's reasoning in *Patterson*.

---

[10] *See also In re Uhrig*, 306 B.R. 687, 694-95 (Bankr. M.D. Fla. 2004) (quoting *Cobb* and finding that "the Debtor by his actions, or lack thereof, waived his right to complain about alleged violations of the automatic stay in the instant case. . . .The Debtor did not just appear in the District Court to defend the automatic stay, but rather participated fully when he chose, e.g.[,] seeking to depose AOL's representatives and opposing AOL on the issue of damages. . . . It was only after the District Court determined the Debtor owed AOL some $6.9 million in damages and AOL sought to pursue its dischargeability issue before this Court that the Debtor retreated to the supposed haven of the bankruptcy court and the automatic stay.") (internal citations and footnote omitted).  In *Cobb*, the debtor appeared through his attorney and contested a motion to set aside in state court.  Because the debtor exercised his power to defend, the court concluded that he waived the automatic stay, at least with regard to the motion to set aside.  *In re Cobb*, 88 B.R. at 120-21 (internal citation omitted).  While *Cobb* and *Uhrig* both dealt with the issue of whether an automatic stay was violated, the court concludes that the reasoning in these cases has some relevance to this case.

Like *Patterson*, the Sixth Circuit in *Easley* court concluded that by operation of the automatic stay, the commencement of the plaintiffs' action in that case did not take place until the stay was lifted. *Easley*, 990 F.2d at 908. The court further concluded that "regardless of whether actions filed in violation of the automatic stay are void or voidable, a defendant may invoke the removal jurisdiction of the federal courts to seek dismissal of the action." *Id*. The *Easley* court reasoned that "[a] defendant cannot ignore the reality of a complaint, whether or not it contains a valid claim or whether properly or improperly filed, and must respond to it." *Id*. In summarizing, the court went on to hold that:

> where the debtor unreasonably withholds notice of the stay and the creditor would be prejudiced if the debtor is able to raise the stay as a defense, or where the debtor is attempting to use the stay unfairly as a shield to avoid an unfavorable result, . . . the protections of section 362(a) [will] be unavailable to the debtor.

*Id.* at 911. Under this framework, the court concluded that the plaintiffs' action should be voided and equitable circumstances did not exist to conclude otherwise because the defendant in that case "did not behave unreasonably." *Id.* at 911-912. Rather, "as soon as [the] defendant was made aware of plaintiffs' lawsuit, it notified plaintiffs that their action was in violation of the automatic stay. Defendant did nothing to lull plaintiffs into believing it would not rely on the stay." *Id.*

Unlike the defendant in *Easley*, Arch Aluminum delayed seven months before notifying Plaintiffs and the court of the bankruptcy proceeding it had initiated in Florida, and there is no evidence or allegation that Plaintiffs had any knowledge of the bankruptcy proceeding before Arch Aluminum filed its notice. Moreover, Arch Aluminum does not contend that the state court action filed by Plaintiffs post-petition is void. Accordingly, *Easley* does not support Arch Aluminum's position.

**Memorandum Opinion and Order – Page 18**

Arch Aluminum's reliance on *Value Recovery Group, Incorporated v. Hourani* is also misplaced because it involved a limited stay by a state court of appeals, not an automatic bankruptcy stay, and the court in that case declined to apply the reasoning in *Easley* and *Patterson*. *Value Recovery Group, Inc.*, 115 F. Supp. 2d at 766-67.  Accordingly, Arch Aluminum has failed to meet its burden of establishing that removal was proper, based on equity or otherwise.  The case must therefore be remanded.

## IV.    Conclusion

For the reasons explained, the court lacks subject matter jurisdiction over Case No. DC-10-04225.  Further, removal of Case No. DC-10-00010 under section 1446(b) based on diversity was untimely, and equitable tolling is not warranted.  The court therefore **grants** Plaintiff's and Intervenor's Motion to Remand, and **remands** Case Nos. DC-10-00010 and DC-10-04225 to the 101st Judicial District Court, Dallas County, Texas, from which they were removed.  The clerk of the court shall effect the remand in accordance with the usual procedure.

**It is so ordered** this 20th day of July, 2012.


Sam A. Lindsay
United States District Judge

**Memorandum Opinion and Order – Page 19**